Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorneys for the Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

STEPHEN ILMBERGER, an individual,

    Plaintiff,

v.

STATE OF NEVADA, ex rel. its
DEPARTMENT OF CONSERVATION &
NATURAL RESOURCES, DIVISION OF
FORESTRY, a political subdivision of the
State of Nevada; NDF Chief Pilot KRIS
KIRKLAND in his individual capacity; and
DOES 1 through 10 inclusive,

    Defendants.

Case No.:

**COMPLAINT FOR DAMAGES AND
DECLARATORY RELIEF**

**JURY TRIAL DEMANDED**

COMES NOW, STEPHEN ILMBERGER, ("Ilmberger" or "Plaintiff"), by and through the undersigned counsel, and files the following verified complaint seeking redress for the violation by of Ilmberger's Due Process rights under the Fourteenth Amendment to the United States Constitution and for pendent state law claims against STATE OF NEVADA, ex rel. Its DEPARTMENT OF CONSERVATION & NATURAL

RESOURCES, DIVISION OF FORESTRY, a political subdivision of the State of Nevada; NDF Chief Pilot KRIS KIRKLAND in his individual capacity.

## Jurisdiction

1.    This action arises under 42 U.S.C. § 1983 and the Nevada Constitution.

2.    This Court has jurisdiction of this action pursuant to 28 U.S.C. Sections 1331, 1343, 1367, 2201 and 42 U.S.C. Sections 1983 and 1988.

3.    The Court has personal jurisdiction over the Defendants because the alleged incidents described below occurred within this District.

## Venue

4.    Venue is proper pursuant to 28 U.S.C. Section 1391 in the District of Nevada because the acts giving rise to the Plaintiffs' claims occurred in this District.

## Parties

5.    Plaintiff Stephen Ilmberger is an individual residing in Bend, Oregon. At all times relevant to this complaint, Mr. Ilmberger's primary residence was in Bend, Oregon.

6.    Defendant State of Nevada, ex rel. its Department of Conservation & Natural Resources, Division of Forestry ("NDF"), is a political subdivision of the State of Nevada.

7.    Defendant Kris Kirkland is the Chief Pilot for NDF and acted under color of state law at all relevant times. Kirkland is sued in his individual capacity.

8.    Kirkland was acting within the course and scope of his employment with the NDF at all relevant times, thus Defendant NDF is vicariously liable for Kirkland's conduct.

**Allegations of Fact**

9.      Plaintiff Ilmberger was hired by NDF as a Pilot 3 (Grade 39, classified position) on March 6, 2023, at the beginning of Pay Period (PP) 20 (March 6–19, 2023).

10.     Ilmberger replaced outgoing NDF pilot Matt Hansen, who Ilmberger is informed and believes quit his job.

11.     Ilmberger has over 50 years of flying experience, including 16 years in fire helicopters, with no prior accidents, incidents, or violations, or damage to state equipment.

12.     Ilmberger was placed on a mandatory one-year (full-time equivalent, or FTE) probationary period under NAC 284.442, requiring 2,080 hours of continuous service to attain permanent status per NAC 284.446(1).

13.     Probationary periods for classified employees at Grade 20 or higher are one year FTE.

14.     Ilmberger was assigned a variable 80-hour biweekly work schedule, consisting of 10-hour daily shifts (7:30 a.m. to 6:00 p.m., with a 30-minute unpaid lunch), structured as 8 days on followed by 6 days off.

15.     Ilmberger worked his 80-hour shifts from PP20 (2023) through PP19 (February 19–March 3, 2024), totaling 26 pay periods (52 weeks) and logged exactly 2,080 hours by March 3, 2024.

16.     He then worked two additional 10-hour shifts on March 4 and 5, 2024 (PP20), adding 20 hours for a grand total of 2,100 hours. Overtime hours in prior periods were not counted toward FTE probationary hours.

17.     During probation, Ilmberger received only one performance report, received at 6 months, rated "Meets Standards." He did not receive required reports at

the end of his 7th and 11th months, as mandated by NRS 284.340(2). No disciplinary actions were documented prior to dismissal.

18.     At the end of his workday on March 5, 2024, despite the fact that he had attained post-probationary status, Ilmberger was directly issued a "dismissal from probation" notice by NDF Chief Pilot Kris Kirkland, effective March 6, 2024.  Mr. Kirkland stated to Ilmberger that Kirkland was not required to provide any reason for dismissal.

19.     2024 was a leap-year, and as such, on March 5, 2024, Ilmberger had worked a full 365 day year the day before he was fired by Kirkland on March 6, 2024. By either measure, hours or year, Ilmberger completed his probationary period.

20.     Ilmberger is informed and believes that his job was filled by Matt Hansen in June of 2024, who had the same job previous to Ilmberger.

21.     The dismissal cited NRS 284.290 and NAC 284.458 but did not include a Specificity of Charges or allege just cause required under NRS 284.385 and NRS 284.390.

22.     No pre-termination hearing or opportunity to respond was provided.

23.     This dismissal deprived Ilmberger of his property interest in continued employment without due process, as he had attained post-probationary status by completing 2,080 hours by March 3, 2024, entitling him to permanent status under NAC 284.458(5).

24.     On March 19, 2024, Ilmberger filed a timely appeal with the State of Nevada Department of Administration Human Resources Commission, Division of Hearings and Appeals, arguing he had completed his probationary period and lacked required performance reports.

25.    The appeal was assigned to Hearing Officer Victoria T. Oldenburg. A hearing was held on July 25, 2024.

26.    On August 23, 2025, Hearing Officer Oldenburg ruled in Ilmberger's favor, finding he completed 2,080 hours by March 3, 2024, and an additional twenty (20) hours by the end of the day on March 5, 2024, and attained permanent status under NAC 285.458(5).

27.    The decision of the Hearing Officer reversed the dismissal and awarded backpay from March 6, 2024 up to the date of his reinstatement.

28.    NDF filed a Petition for Judicial Review in the First Judicial District Court in Carson City, Nevada, challenging Hearing Officer Oldenburg's decision on September 9, 2024.

29.    NDF's Petition for Judicial Review was denied on March 7, 2024, affirming the Hearing Officer's decision.

30.    Despite the Court's Order in March of 2024, it took months before NDF offered to reemploy Ilmberger on September 20, 2024.

31.    NDF eventually complied with reinstatement on October 15, 2024.

32.    Despite this, to date, NDF has not paid Ilmberger's back pay and benefits.

33.    Upon returning to work after prevailing in the administrative process, Ilmberger was subjected to harassment and a hostile work environment by Kirkland and other NDF personnel.

34.    When Ilmberger returned to work, the pilot who replaced Ilmberger, Matt Hansen, was still employed at NDF, leaving NDF with five pilots, despite the fact that NDF is only budgeted for four pilot positions.

35.     On Ilmberger's first day back at work on October 15, 2024, during a meeting Kirkland expressly told Ilmberger that he would be subject to extraordinary scrutiny for everything he did - including imposing surprise evaluations, training, and surprise policy quizzes - measures which have never been imposed on Ilmberger nor any other pilot at NDF during Ilmberger's employment with NDF.

36.     Based on the meeting with Kirkland, it was clear to Ilmberger that Kirkland's intent was to create a pretext to fire Ilmberger and to keep his replacement Matt Hansen.

37.     Kirkland informed Ilmberger was compelled to share a computer and desk with Matt Hansen - despite sufficient room for a new desk and the fact that every other NDF pilot had their own desk and computer.  When Ilmberger tried to log on to the computer he shared with Hansen, he discovered that Hansen had placed a screensaver on the computer that stated "I'm Gay, that O.K.!" which Ilmberger perceived as an insult from Mr. Hansen.  Ilmberger is informed and believes that Mr. Hansen is not gay.

38.     Further, Ilmberger found the words "this ain't no leap year" handwritten on the briefing whiteboard in the NDF hanger.

39.     During the October 15, 2024 meeting, Kirkland also informed Ilmberger that he would be supervised by fellow fire pilot Paul Shipman, which was an extraordinary measure because fire pilots are not supervised by other fire pilots, only by the chief pilot.

40.     Kirkland's actions against Ilmberger were in retaliation for Ilmberger asserting his administrative and constitutional rights to due process through the appeal to get his job back.

41.    Fire pilots are required to ensure that they comply with the Federal Aviation Administration's "IM SAFE" (Illness, Medications, Stress, Alcohol, Fatigue, and Emotion) tool used for self-evaluating whether a pilot is in a safe frame of mind to take flight.  Because of the stress created by Kirkland, Ilmberger felt that it was unsafe for him to fly an NDF fire helicopter.  Pilots make numerous critical flight decisions which can affect the safety of flight. During Ilmbergers' employment at NDF, Ilmberger was the only fire pilot who had no record of damaging state equipment.

42.    The retaliation from Kirkland against Ilmberger included unwarranted scrutiny, and creation of intolerable and unsafe working conditions, rendering the post-deprivation remedies inadequate as they failed to prevent ongoing violations of Ilmberger's rights even after he was vindicated in Court.

43.    A reasonable person in Ilmberger's position—a veteran pilot with decades of experience and thousands of safe operational flight hours—would have felt compelled to resign under these conditions, which were foreseeably intolerable and left no reasonable alternative to resignation.

44.    The hostile environment culminated in Ilmberger's constructive discharge on October 27, 2024, as the conditions became so intolerable that a reasonable person in his position would feel compelled to resign. Ilmberger wrote an email to NDF human resources resigning his position.

45.    Ilmberger was forced to resign due to retaliation.  For safety, any pilot flying a firefighting helicopter with crew aboard into a burning forest must maintain a clear and unobstructed state of mind.

46.    Defendants either intended to force Ilmberger's resignation or had foreseeable knowledge that their actions would lead to his resignation, as evidenced by

Kirkland's explicit statements and the pattern of retaliation following the administrative victory.

47.    Defendants' actions violated Ilmberger's procedural due process rights under the Fourteenth Amendment, as the pre-deprivation process was nonexistent, and post- deprivation remedies were inadequate due to continued retaliation.

48.    As a direct and proximate result, Ilmberger suffered lost wages, benefits, emotional distress, and other damages exceeding $75,000, including damage to Ilmberger's reputation and future employment prospects.

**FIRST CAUSE OF ACTION**
**(Violation of the Due Process Clause of the 14th Amendment - 42 U.S.C. § 1983)**
**(Against Defendant Kirkland)**

49.    Plaintiff incorporates by reference the allegations in paragraphs above as though fully set forth herein.

50.    Ilmberger had a protected property interest in his continued employment as a post-probationary public employee under Nevada law, having completed his one-year full-time equivalent probationary period of 2,080 hours by March 3, 2024, and automatically attaining permanent status pursuant to NAC 284.458(5) because no separation report was issued before the end of probation.

51.    Defendant Kirkland, acting under color of state law in his individual capacity, deprived Ilmberger of this property interest without adequate procedural due process by summarily terminating him on March 5, 2024, without providing any pre-deprivation notice, opportunity to be heard, explanation of evidence, or just cause as required for permanent employees under NRS 284.385 and NRS 284.390.

52.    Although post-deprivation remedies were available through the administrative appeal process, these remedies were rendered constitutionally

inadequate because, upon Ilmberger's reinstatement, Kirkland subjected him to ongoing retaliation for exercising his due process rights, including harassment, heightened scrutiny, and creation of a hostile work environment that ultimately led to his constructive discharge.

53.     This retaliation undermined the effectiveness of the post-deprivation process, as it failed to provide a meaningful remedy and instead perpetuated the deprivation of Ilmberger's property interest in continued employment free from arbitrary interference.

54.     The adverse actions by Kirkland demonstrate that the process as a whole did not satisfy due process requirements because despite prevailing in Court, Kirkland sought to take Ilmberger out of service.

55.     Kirkland's actions were intentional or reckless, and he personally participated in the deprivation as the individual who issued the dismissal notice and orchestrated the subsequent retaliation under the color of his authority under state law.

56.     As a direct and proximate result of Kirkland's violations, Ilmberger suffered damages including lost wages and benefits, emotional distress, reputational harm, and other compensatory damages in an amount exceeding $75,000, along with entitlement to punitive damages due to Kirkland's malicious and reckless conduct.

**SECOND CAUSE OF ACTION**
**(Constructive Discharge)**
**(Against All Defendants)**

57.     Plaintiff incorporates by reference the allegations in paragraphs above as though fully set forth herein.

58.     Following Ilmberger's reinstatement, Defendants Kirkland and the State of Nevada, through NDF, created working conditions so unacceptable, intolerable, and

discriminatory that a reasonable person in Ilmberger's position would feel compelled to resign, amounting to a tortious constructive discharge under Nevada law.

59.    Ilmberger's resignation on October 27, 2024, was involuntary, as it was caused by Defendants' actions, including but not limited to: Kirkland's express threats of heightened scrutiny; unwarranted monitoring and criticism of Ilmberger's performance; hostile communications and interactions; isolation from colleagues and resources necessary to perform his duties; and other retaliatory conduct aimed at punishing Ilmberger for successfully asserting his due process rights in the administrative appeal.

60.    A reasonable person in Ilmberger's position—a veteran pilot with decades of experience—would have felt compelled to resign under these conditions, which were foreseeably intolerable and left no reasonable alternative to resignation.

61.    Defendants either intended to force Ilmberger's resignation or had foreseeable knowledge that their actions would lead to his resignation, as evidenced by Kirkland's explicit statements and the pattern of retaliation following the administrative victory.

62.    This constructive discharge was in direct retaliation for Ilmberger exercising his constitutional rights, further exacerbating the due process violation and constituting a standalone tort under Nevada common law.

63.    As a direct and proximate result, Ilmberger suffered damages including lost wages and benefits from the date of resignation, emotional distress, and other compensatory damages exceeding $75,000.

///

///

## THIRD CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)
### (Against All Defendants)

64.     Plaintiff incorporates by reference the allegations in paragraphs above as though fully set forth herein.

65.     The employment relationship between Ilmberger and Defendant NDF constituted an enforceable contract under Nevada law, governed by statutes, regulations, and policies including but not limited to NRS Chapter 284 and NAC Chapter 284, which established the terms of Ilmberger's probationary period, attainment of permanent status, performance evaluations, disciplinary procedures, and rights to continued employment.

66.     Inherent in this employment contract was an implied covenant of good faith and fair dealing, whereby Defendants agreed not to do anything to destroy or injure Ilmberger's right to receive the benefits of the contract, including secure employment upon successful completion of probation, fair performance evaluations, protection from arbitrary dismissal, backpay and benefits upon reinstatement, and a work environment free from retaliation and harassment.

67.     Defendants breached this implied covenant by engaging in actions that unfairly frustrated Ilmberger's ability to receive the benefits of his employment contract, including but not limited to: summarily dismissing Ilmberger without cause after he had attained permanent status; failing to provide required performance reports during probation; withholding backpay, benefits, and retirement contributions despite judicial affirmation of the Hearing Officer's decision; subjecting Ilmberger to retaliation upon reinstatement through heightened scrutiny, surprise evaluations and quizzes, unwarranted supervision by a peer pilot, compelled sharing of workspace resources,

and creation of a hostile work environment; and orchestrating conditions intended to force Ilmberger's resignation.

68.    A special relationship of trust and special reliance existed between Ilmberger and Defendants, as Ilmberger was a public employee in a safety-critical role as a fire pilot, relying on NDF and Kirkland for fair administration of employment policies, safe working conditions, and adherence to statutory protections in exchange for his dedicated service in high-risk firefighting operations.

69.    Defendants' conduct went well beyond the bounds of an ordinary breach of contract, rising to the level of a tort, as it was malicious, reckless, and retaliatory, evidenced by Kirkland's explicit threats of extraordinary scrutiny, the pattern of harassment following Ilmberger's successful administrative and judicial appeals, and the foreseeable creation of intolerable conditions that compelled Ilmberger's constructive discharge, all of which undermined the fundamental purpose of the employment relationship.

70.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Ilmberger suffered damages including lost wages and benefits, emotional distress, reputational harm, and other compensatory damages exceeding $75,000, along with entitlement to punitive damages against Kirkland in his individual capacity due to his malicious and reckless conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.  Non-economic damages in an amount to be proven at trial;

2.  Economic  damages in an amount to be proven at trial;

3.  Punitive damages against Kirkland in his individual capacity;

4.  Attorney's fees and costs under 42 U.S.C. § 1988;

5.  Declaratory relief that Defendants violated Ilmberger's rights;

6.  For pre and postjudgment interest as provided by law;and

7.  Such other relief as the Court deems just.


Dated: Dec 5, 2025

By: */s/ Luke Busby, Esq.*
Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

13