AARON D. FORD
Attorney General
KRISTEN R. GEDDES
NV State Bar No. 9027
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
9790 Gateway Drive, Suite 100
Reno, Nevada 89521
Tele: (772) 687-2142
Fax: (775) 687-1822
Email: kgeddes@ag.nv.gov

*Attorneys for Defendants State of Nevada, ex rel. its Department of Conservation & Natural Resources, Division of Forestry, and NDF Chief Pilot Kris Kirkland*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEPHEN ILMBERGER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NEVADA, ex rel. its DEPARTMENT OF CONSERVATION & NATURAL RESOURCES, DIVISION OF FORESTRY, a political subdivision of the State of Nevada; NDF Chief Pilot KRIS KIRKLAND in his induvial capacity; and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No. 3:25-cv-00712-ART-CSD<br><br>**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF** |

Defendants STATE OF NEVADA, ex rel. its DEPARTMENT OF CONSERVATION & NATUAL RESOURCES, DIVISION OF FORESTRY, a political subdivision of the State of Nevada (NDF) and NDF Chief Pilot KRIS KIRKLAND (collectively Defendants)), by and through their attorneys, AARON D. FORD, Attorney General and KRISTEN R. GEDDES, Senior Deputy Attorney General, and pursuant to Federal Rules of Procedure (FRCP) 12(b)(6),

file their Motion to Dismiss Plaintiff's Amended Complaint for Damages and Declaratory Relief. This Motion is made and based upon the following Memorandum of Points and Authorities, the attached exhibits and all pleadings and documents on file herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This is an employment case arising from Plaintiff Stephen Ilmberger's release from his state civil service position as pilot with NDF, his successful administrative appeal of the termination and reinstatement to his position. After being reinstated, Ilmberger worked for 12 days before resigning and claiming constructive discharge and initiating the instant suit. The following authorities demonstrate that the Amended Complaint is subject to dismissal on grounds of qualified immunity, *res judicata* and that it fails to state claims for relief. Consequently, Defendants request the Amended Complaint be dismissed in its entirety.

## II. STATEMENT OF FACTS

Stephen Ilmberger (Ilmberger) was hired by NDF on March 6, 2023, as Pilot III. Compl. (ECF 008) ¶ 9. Ilmberger's pilot position was a classified position within Nevada's civil service classification system. *See* NRS Chapter 284.160. Ilmberger's Pilot III position was a grade 39. Positions above grade 20, including Ilmberger's grade 39 position, are required to serve a one-year probationary period in order for the employee to attain permanent, classified status. ECF 008 ¶ 3; *and see* NAC 284.442.

On March 5, 2024, Defendant Kirkland notified Ilmberger he was being rejected from probation and llmberger was released from employment. ECF 008 ¶ 18. Ilmberger appealed his rejection from probation pursuant to NAC 284.6562, which provides for a hearing before a special hearing officer appointed by the state Human Resources Commission. ECF 008 ¶ 24; **Exs. 1–2**[1]. An administrative appeal hearing was held on July 25, 2024. ECF 008 ¶ 25; **Ex. 1**, p.

[1] In resolving a Rule 12(b)(6) motion " . . . a district judge may generally consider a document outside the complaint when deciding a motion to dismiss if the complaint specifically refers to the document and if its authenticity is not questioned." Long v. Venetian Casino Resort, No. 209CV1177LDGLRL, 2010 WL 11629637, at *2 (D. Nev. Mar. 11, 2010) (quoting I*nlandboatmens Union of Pac. v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002)); and see, *Breliant v. Preferred Equities Corp*., 109 Nev. 842, 847, 858 P.2d 1258, 1261 (1993) (While a court may generally not consider matters outside the pleading being attacked, "a court may

1. Ilmberger and NDF presented evidence and testimony to the hearing officer, with each side advancing different interpretations NAC 284.446 as to when Ilmberger completed, or did not complete, a one-year probationary period. **Ex. 1.** NDF's witnesses testified that the State's practice was to calculate the probationary period as one calendar year (calendar days) and not hours worked for the purposes of the probationary period. **Ex. 1** at 3:14–18. Consequently, using the employer's calendar year method, when Ilmberger was released on March 4, 2024, it would have been the last day of his probationary period. *Id.* On the other hand, Ilmberger focused on the "Full Time Equivalent" (FTE) reference in NAC 284.446(1)[2] and multiplied his 80-hour pay bi-monthly pay periods to compute actual hours worked, arguing that he achieved permanent status prior to March 5, 2024. ECF 008 ¶¶ 14–16; **Ex. 1**, p. 2 ¶¶ 5. The hearing officer agreed with Ilmberger and concluded that applying a "FTE" method, Ilmberger attained permanent status two days *earlier* on March 3, 2024. ECF 008 ¶ 26; **Ex. 1** at 4:3–7. Consequently, the hearing officer reversed Ilmberger's rejection from probation and ordered him reinstated to his position with pay for the period of dismissal. ECF 008 ¶¶ 26–27; **Ex. 1**.

NDF petitioned for judicial review in the First Judicial Court. ECF 008 ¶¶ 28; **Ex. 2**. Notwithstanding that the First Judicial District Court concluded that the administrative decision prejudiced the State's substantial rights, the District Court still affirmed the reinstatement order on judicial review. **Ex. 2.** at 5:13–23.

On October 15, 2024, Ilmberger resumed his employment at NDF. ECF 008 ¶ 31. Twelve days later, on October 27, 2024, Ilmberger resigned from his employment with NDF. ECF 008 ¶ 45.

---

properly consider 'matters of public record, orders, items present in the record of the case, and any exhibits attached to the complaint when ruling' on such a motion.").

[2] **NAC 284.446 Time counted toward completion of probationary period. (NRS 284.065, 284.155, 284.290)**

1. Except as otherwise provided in subsection 4 and in NAC 284.4375, a probationary employee must perform his or her duties continuously in the classified service for either 6 months or 1 year (full-time equivalent) as required for the class in which he or she is employed to attain permanent status.

. . .

On February 17, 2026, Ilmberger filed an Amended Complaint following Defendants' Motion to Dismiss (ECF 005) asserting claims for § 1983 federal and state law Due Process violations, constructive discharge and breach of the implied covenant of good faith and fair dealing. ECF 008.

## III. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Chapen v. Munoz*, No. 306CV00353BESVPC, 2007 WL 9728687, at *1 (D. Nev. Aug. 6, 2007), quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is proper when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988). Although its review is generally limited to the contents of the complaint, the Court may consider documents referenced extensively in the complaint and documents that form the basis of a plaintiff's claim.[3] *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003). The Court must accept as true all material allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 (9th Cir. 2000). The Court must also construe the allegations of the complaint in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Accordingly, the Court may only grant a motion to dismiss under Rule 12(b)(6) if it is certain that the plaintiff will not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).

## IV. ARGUMENT

### A. Plaintiff's Due Process Claims Must be Dismissed

Section 1983 requires a plaintiff to prove that (1) a person acting under color of state law (2) committed an act that deprived him of some right, privilege, or immunity protected by the Constitution or federal law. *Chapen v. Munoz*, No. 306CV00353BESVPC, 2007 WL 9728687, at *2 (D. Nev. Aug. 6, 2007) (quoting *Federation of African Am. Contrs. v. City of Oakland*, 96

---

[3] *See* fn. 1, *supra*.

F.3d 1204, 1216 (9th Cir. 1996); *Vandermeer v. Douglas Cty.*, 15 F. Supp.2d 970, 984–85 (D. Nev. 1998)). The first inquiry in any § 1983 action is whether the plaintiff has been deprived of a right secured by the Constitution or federal laws. *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 142–47 (1979); *Allen v. Portland*, 73 F.3d 232, 235 (9th Cir. 1995)).

"[I]it is well-settled that '[a]lthough the Fourteenth Amendment protects property rights, it does not create them. Instead, property rights are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .'" *Smoler v. Bd. of Educ. for W. Northfield Sch. Dist. #31*, 524 F. Supp. 3d 794, 805 (N.D. Ill. 2021) (quoting *Price v. Bd. of Educ.*, 755 F.3d 605, 607–08 (7th Cir. 2014) (quoting *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509–10 (7th Cir. 2013)) (internal quotations omitted)). "A plaintiff must identify a source, independent of the Due Process Clause, for the protectable property interest []he claims to have." *Id.* (noting that it is "vital" to look to allegations and define property interest at issue). *Id.*

Plaintiff alleges in the Due Process claim that the actions by Kirkland demonstrate that the process "as a whole" did not satisfy due process, co-mingling allegations of (1) a pre-termination deprivation and (2) a post-reinstatement Due Process violation. The post-reinstatement due process claims are predicated upon the constructive discharge claim in Claim Three. *See* ECF 008 ¶¶ 54–56. Because the pre-termination and post-reinstatement allegations of Due Process arise from different fact patterns, the allegations regarding pre- and post-termination violations are separately addressed.[4]

### B. Plaintiff's Pre-Termination Due Process Claims Are Barred by Immunity Doctrines and Res Judicata

Procedural due process embodies the principle that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993)). A procedural due process claim requires a showing of "(1) a deprivation of a

[4] *See, e.g.*, ECF 008 ¶ 48 (referencing pre-termination and post-deprivation due process remedies).

constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F. 3d 971, 982 (9th Cir. 1998).

1. Plaintiff's 14th Amendment pre-termination Due Process claim is barred by qualified immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id*. (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S. Ct. 534, 116 L.Ed.2d 589 (1991) *(per curiam)).* Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231, 129 S. Ct. at 815. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citing *Groh v. Ramirez,* 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L.Ed.2d 1068 (2004) (KENNEDY, J., dissenting) (additional citation omitted) for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")). In *Katz*, the Court opined that a vital component of the inquiry is that qualified immunity analysis must be undertaken in light of the specific context of the case, not as a broad general proposition.

Under the specific context of this case, qualified immunity shields Defendant Kirkland from any pre-termination due process claim because Plaintiff's right to any pre-termination

notice and hearing procedure as a permanent classified employee was not clearly established when Plaintiff was rejected from probation on March 5, 2024. The entire thrust of Plaintiff's administrative appeal and the subsequent judicial review turned on a legal interpretation of the civil service regulation governing Ilmberger's one-year probationary period. *See* **Exs. 1–2**. As witnesses for NDF testified, the State's practice was to calculate the probationary period as one calendar year. **Ex. 1** at 3:14–18. Applying the state's generally accepted practice, Ilmberger's release on March 5, 2024, would have been on the last day of his probationary period, as Kirkland believed, and would have been lawful using a calendar year method. *Id.*[5]

Conversely, Ilmberger's FTE interpretation of NAC 284.446(1) advanced an esoteric interpretation of the regulation that required tracking regular hours worked over one-year to determine that Ilmberger became permanent earlier than one calendar year.

A probationary employee is akin to an at-will employee in Nevada that can be rejected from probation for any lawful reason. NAC 284.450. Kirkland's belief that Ilmberger was still within his probationary period (utilizing a calendar year) issued the rejection notice which was immediate and did not require cause for release. *Id.* To be sure that Kirkland's belief was reasonable when releasing Ilmberger on the last day of probation, NAC 284.458(5) states that "[i]f a report of separation is not received by the employee or the Division of Human Resource Management by the close of business on the last day of the probationary period, the employee is considered to have satisfactorily completed the probationary period and acquired permanent status." (Emphasis added).

Defendant Kirkland, acting as a reasonable supervisor applying the accepted calendar year method and express language of NAC 284.458(5), would not have clearly known that applying an *FTE method* resulted in Ilmberger becoming a permanent employee two days earlier. Hence, it would not have been clear to Kirkland that any pre-termination notice and hearing procedures were required, which are only afforded to permanent, and not probationary

[5] *And see generally, United States v. Marcello*, 212 F.3d 1005, 1008 (7th Cir. 2000) (discussing computing one-year calendar method vs. anniversary method in the context of AEDPA); *United States v. Hurst,* 322 F.3d 1256, 1261 (10th Cir. 2003) (same and further determining limitation period where leap year is included).

employees. *See* NRS 284.385; 284.390 (notice and hearing procedures applicable to *permanent* classified employees); *Barachkov v. Davis*, 580 F. App'x 288, 297 (6th Cir. 2014) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 316–18 (6th Cir. 2006) (the relevant inquiry in a procedural due process case is whether a reasonable official would have known that terminating the employee without a pre-termination hearing was unlawful).

To be sure, on judicial review, the District Court stated that the hearing officer decision prejudiced the State's substantial rights by reversing Ilmberger's termination, but the District Court affirmed the decision when deferring to the hearing officer's analysis. **Ex. 2** at 5:13–17.

Qualified immunity shields Kirkland from any pre-termination Due Process claim because any due process rights Ilmberger had as a permanent classified employee were not clearly established under conflicting legal interpretations to compute a one-year probationary period, coupled with NAC 284.458(5) which allowed notice of separation to be given up to the last day of the probationary period. *Mills v. Leguen*, No. 2:24-CV-02107-NJK, 2025 WL 1448464, at *2 (D. Nev. May 19, 2025) ("Clearly established" in this context means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful.").

Kirkland's applying the calendar-method customarily used by the State would not have alerted Kirkland that Ilmberger became permanent in advance of one calendar year, or that any pre-termination notice and hearing procedures were required. Thus, the federal Due Process claim is barred by qualified immunity and must be dismissed.

2. <u>The 11th Amendment bars the state Due Process claim again Defendant State of Nevada *ex rel.* its Department of Conservation and Natural Resources, Division of Forestry</u>.

Plaintiff's second cause of action alleges a state law Due Process claim that is asserted against all defendants. Am. Compl. at 8:16–17.

State sovereign immunity afforded to governmental actors under NRS 41.031 is a defense to claims made under state law. *Ortega v. Reyna*, 114 Nev. 55, 953 P.2d 18 (1998). Under the Eleventh Amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court. *Pennhurst State School & Hosp. v.*

*Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 907, 79 L.Ed.2d 67 (1984) (Eleventh Amendment proscribes suit against state agencies "regardless of the nature of the relief sought"). Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court *sua sponte*. *In re Jackson*, 184 F.3d 1046 (9th Cir. 1999). Although Plaintiff alleges that the State is vicariously liable for Defendant Kirkland's actions under a respondeat superior theory, the Eleventh Amendment still bars a suit where "the state is the real, substantial party in interest." *Penhurst, id*. (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S. Ct. 347, 350, 89 L.Ed. 389 (1945)); *and see, Cory v. White*, 457 U.S. 85, 91, 102 S. Ct. 2325, 2329, 72 L.Ed.2d 694 (1982)) (when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief).

Defendant State of Nevada has not waived 11th Amendment immunity from suit in federal court. Therefore, Plaintiff's state law Due Process claim asserted against the State in the second cause of action must be dismissed.

3. <u>The state law Due Process claim is barred by discretionary immunity - NRS 41.032</u>.

The Nevada Supreme Court has stated that to fall within the scope of discretionary-act immunity, which is contained in NRS 41.032, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 123 Nev. 433, 446–47, 168 P.3d 720, 729 (2007). In *Martinez*, the court clarified that "decisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns." *Id*. Where an employee complains of constructive termination, the state employer meets the first element for discretionary immunity because the management decisions regarding a state employee's claim asserting constructive termination meets the elements of individual judgment or choice. *See Cates v. Pub. Employees' Ret. Sys. of Nevada*, No. 0305CV-00696-LRH-RAM, 2008 WL 873611, at *6 (D. Nev. Mar. 27, 2008), *aff'd sub nom. Cates v. Pub. Emp. Ret. Sys. of Nevada*, 357 F. App'x 8 (9th Cir. 2009). Further,

because the Nevada Supreme Court has held that there is a strong public policy for granting employers broad discretion in managing their offices, and the hiring and firing of employees is a large part of management, the defendant state employer's decisions fall within the policy considerations of the second element of discretionary immunity. Discretionary act immunity bars the due process claim against Defendant Kirkland because Plaintiff's termination was the product of Kirkland's individual judgment or choice based on considerations of social, economic, or political policy.

4. The federal and state pre-termination due process claims are barred by res judicata.

When an issue of fact or law has been actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties. *Hoag v. Sweetwater Int'l*, 857 F. Supp. 1420, 1423 (D. Nev. 1994) (citing Restatement (Second) of Judgments § 27 (1982)). Nevada law indicates that a judgment is final once the litigation has come to an end. *Brennan v. EMDE Med. Rsch., Inc.,* 652 F. Supp. 255, 261 (D. Nev. 1986) (citing *Paul v. Pool,* 96 Nev. 130, 605 P.2d 635, 637 (1980)).

"[A]s a matter of federal common law, federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983." *Univ. of Tennessee v. Elliot*, 478 U.S. 788, 797–99, 106 S. Ct. 3220, 3225–27, 92 L.Ed.2d 635 (1986). The Ninth Circuit has held that *Elliot* requires the court to give preclusive effect, at a minimum, to the factfinding of state administrative tribunals, but further, "the federal common law rules of preclusion described in *Elliot* extend to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in [*United States v. Utah Construction & Mining Co*., 384 U.S. 394, 422, 86 S. Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) ]." *Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1032–33 (9th Cir. 1994), as amended (Dec. 27, 1994). The fairness requirements include: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolved disputed

/ / /

issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate. *Utah Construction & Mining Co*., 384 U.S. at 422, 86 S.Ct. at 1560.

Like the federal authorities, *supra*, the Nevada Supreme Court has also held that a decision by an administrative agency can be given preclusive effect in subsequent litigation. *See Britton v. City of N. Las Vegas*, 106 Nev. 690, 799 P.2d 568, 569 (Nev.1990) (adopting a general rule that decisions of administrative agencies will be given preclusive effect in Nevada state courts). In a *res judicat*a determination, three inquiries are pertinent: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the action in question; (2) whether there was a final judgment on the merits; and (3) whether the party against whom the judgment is asserted was a party, or in privity with a party to the prior adjudication. *See Horvath v. Gladstone*, 97 Nev. 594, 596, 637 P.2d 531, 533 (1981). All three elements are met here because: (1) the issue of whether Plaintiff was given pre-termination notice and hearing was litigated; (2) there was a final judgment on the merits, including a decision by the hearing officer that was also subject to judicial review; and (3) the parties to the prior administrative adjudication are the same. *See also, e.g., Lambert v. Andrews*, 79 F. App'x 983, 984–85 (9th Cir. 2003) (describing Nevada's processes in administrative proceeding to include a right to be represented by an attorney at the hearing, to present evidence, and to cross-examine witnesses per NRS 284.390(3); that the hearing officer was required to render a decision based solely on competent and relevant evidence introduced at the hearing under NRS 284.390(4); and, that the decision was binding on both parties, and both parties had a right to judicial review under NRS 233B.130).

All pre-termination Due Process claims are barred by *res judicata* because the decision of the hearing officer has preclusive whether Plaintiff was terminated without pre-termination notice and hearing procedures afforded to classified employees. The hearing officer of the State Human Resources Commission was acting in a quasi-judicial capacity when she made findings of fact and conclusions of law regarding Plaintiff's termination, ordering Plaintiff to be reinstated to his position with pay for the period of dismissal. The parties had the opportunity to litigate the issue before the hearing officer and on judicial review. The State did not seek

additional appellate review from the District Court's denial of judicial review and the decision became final as to the administrative appeal proceedings. Consequently, the administrative decision is preclusive as to the Due Process claims asserted in the Amended Complaint.

### C. Plaintiff's Post-Reinstatement Federal and State Due Process Claims are Predicated Upon a Facially Invalid Constructive Discharge Claim; Consequently, The Due Process and Constructive Discharge Claims Must be Dismissed

"A public employee who voluntarily resigns cannot complain about a lack of due process, but an 'involuntary' resignation, *i.e.*, constructive discharge, may in certain circumstances form the basis of a due-process claim. *Smoler,* 524 F. Supp. 3d at 807 (quoting *Palka v. Shelton,* 623 F.3d 447, 453 (7th Cir. 2010)). Constructive discharge happens when an employer makes an employee's job so unbearable that an employee resigns. *Id.* Constructive discharge is treated as if the employee was simply fired, and as such, the theory falls under the procedural due process umbrella. *See Patterson v. Portch*, 853 F.2d 1399, 1406 (7th Cir. 1988). "[T]o ultimately prove a due process constructive discharge claim, the bar is a high one: 'a plaintiff must prove that the defendant engaged in harassing behavior sufficiently severe or pervasive to alter the conditions of [his] employment.'" *Witte v. Wisc. Dep't of Corr.*, 434 F.3d 1031, 1035-36 (7th Cir. 2006) (noting due process constructive discharge claim uses same general approach as a Title VII hostile work environment claim but that alleged working conditions "**must be even more egregious than those that would support a finding of a [Title VII] hostile work environment**"). (Emphasis added).

Here, Plaintiff's post reinstatement Due Process claims[6] must be dismissed because as the following argument demonstrates, the constructive discharge claim upon which the post-reinstatement due process claims are based, fails to state a claim for relief.

/ / /

/ / /

/ / /

[6] The post-reinstatement allegations of due process violations under the federal and state law are the same; therefore, this section is argued as to both due process claims.

1. <u>Plaintiff's constructive discharge claim fails to state a claim for relief because a reasonable person would *not* find the working conditions alleged in the Amended Complaint to be intolerable</u>.

To establish a case of constructive discharge in Nevada, a plaintiff must prove that: (1) the employee's resignation was induced by action and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied. *Dillard Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 885 (1999), *cert. denied*, 530 U.S. 1276 (2000) (citing *Martin v. Sears, Roebuck and Co.*, 111 Nev. 923, 899 P.2d 551, 553 (1995)). The Ninth Circuit follows an "objective" standard. *Liston v. Las Vegas Metro. Police Dep't*, 111 Nev. 1575, 1579, 908 P.2d 720, 723 (1995) (quoting *Satterwhite v. Smith,* 744 F.2d 1380, 1381 (9th Cir.1984)); *and see, Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) ("Such intolerability . . . is judged by an objective standard, not the plaintiff's subjective feelings."). Consequently, "trivial or isolated acts of the employer are not sufficient to support a constructive discharge claim." *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 591 (Iowa 2017) (additional citation omitted). "Rather, the 'working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable.'" *Id.* (quoting *Haberer v. Woodbury County*, 560 N.W.2d 571, 576 (Iowa 1997)); *see also e.g.*, *Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2000) (An isolated incident of mistreatment is not enough; employee had to show aggravating factors such as a continuing pattern of discriminatory treatment).

Plaintiff alleges a handful of minor annoyances occurring during his 12 days of re-employment, including:

- Being told he would be subject to scrutiny and surprise quizzes;
- Being told he would be supervised by another pilot who was not the chief pilot;
- That he had to share a desk and computer, rather than having a new desk purchased for him;

- That the individual he shared the computer with had a screen saver that said "I'm Gay, that O.K.!"
- That a comment was written on a white board stated that it was not a leap year

ECF 008, ¶¶ 36, 38–40.

The facts alleged by Plaintiff fall plainly short of working conditions amounting to "extraordinary and egregious" "unusually aggravated" or a "continuous pattern" of discrimination such that, under an objective standard, the working conditions were intolerable in the 12 days that Plaintiff worked after being reinstated.

Moreover, while Plaintiff cites his own self-evaluation of ostensible stress caused by the work environment under the FAA's "IM SAFE" tool (Am. Compl. ¶ 42), an employee's own subjective opinion of workplace stress has been held to be insufficient to establish aggravated and insufferable employment actions and conditions. S*ee Cates v. Pub. Employees' Ret. Sys. of Nevada*, No. 0305CV-00696-LRH-RAM, 2008 WL 873611, at *4 (D. Nev. Mar. 27, 2008), aff'd sub nom. *Cates v. Pub. Emp. Ret. Sys. of Nevada*, 357 F. App'x 8 (9th Cir. 2009).

Rather, "[t]o act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly." *Tidwell*, 93 F.3d at 494. Thus, "[a]n employee who quits without giving [the] employer a reasonable chance to work out a problem has not been constructively discharged." *Id.* Thus, "passivity in the face of working conditions alleged to be intolerable is often inconsistent with the allegation." *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998); *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 592–93 (Iowa 2017) (APPEL, J., concurring in part) (additional citations omitted) (an employee cannot simply 'quit and sue,' claiming he or she was constructively discharged. The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer).

Plaintiff's allegations under a constructive discharge claim are simply isolated, trivial issues that objectively do rise to the level of making out a constructive discharge claim. Evidently, Plaintiff assumed the worst, quit and sued—claiming constructive discharge, but

these allegations occurring over a span of 12 days are neither a pattern of activity nor are they indicative of intolerable working conditions. *See White*, *supra* (due process constructive discharge "must be even more egregious than . . . a [Title VII] hostile work environment"); *Steiner v. Showboat Operating Co.,* 25 F.3d 1459 (9th Cir.1994) (rejecting casino dealer's constructive discharge claim where employee alleged employer was laying the groundwork for her termination or was attempting to force her to quit, citing below standard evaluation, inability to supervise any game except blackjack, supervisor ordered her to oversee a complicated game of roulette, which he knew she was incapable of doing).

It is clear that Plaintiff's constructive discharge claim fails to state a claim for relief and must be dismissed. Consequently, the Due Process constructive discharge claims also fail to state a claim and must likewise be dismissed.

### D. Employment In State Civil Service Does Not Support a Claim For Breach of the Covenant of Good Faith and Fair Dealing

Where public employment is held as provided by statute, and not by contract, the statutes, rather than contracts, govern the terms and conditions of civil service employment. *See*, *e.g.,* 15A Am. Jur. 2d Civil Service § 2. The statutory terms defining a particular right to public employment determine its dimensions and scope, and a public employee in such jurisdictions can have no vested contractual right in the terms of his or her employment, as such terms are subject to change by the proper statutory authority. *Id*. (citing *Williams v. Los Angeles City Department of Water and Power,* 181 Cal.Rptr. 868 (1982) (observing in California, the terms and conditions of public employment are generally "fixed by the statute, rules or regulations creating it, not by contract (even if one is involved)."); *and see also, e.g.*, *Miller v. State of Cal.,* 557 P.2d 970 (Cal. 1977) (holding it is clear California civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing (quoting *Shoemaker v. Myers,* 52 Cal.3d 801 P.2d 1054 ((1990)); *Hill v. City of Long Beach,* 40 Cal.Rptr.2d 125 (Ct.App. 1995) (judgment for city employee on implied covenant claim vacated where terms of employment were held to be established by law, not contract, and employee not entitled to assert contract remedies against the city).

This Court observed the principle in *Keating v. Gibbons*, No. 308CV00609RCJRAM, 2010 WL 11594814, at *6 (D. Nev. Mar. 26, 2010), where the court recognized that a classified state employee's entitlement to continued employment, if any existed, was defined by statute and not by contract because Nevada has implemented procedures designed to protect the interests of permanent classified state employees through NRS Chapter 284. The *Keating* court rejected the state employee's contract-based implied breach of covenant after finding the employee's public employment, as defined by statute, failed to give rise to any contractual right to continued employment. *Id*. at *6.

Further, the Court stated that a claim to contractual rights of continued employment exist only in a narrow class of cases, as in insurance cases, where there is a "special reliance, trust and dependency." *Clements v. Airport Auth. of Washoe Cnty*., 69 F.3d 321, 336 (9th Cir. 1995). In the employment context, the Nevada Supreme Court has stated that it looks for facts such as a "promise of employment 'until retirement,' lengthy duration of employment, and termination characterized by 'deception,' 'perfidy,' and 'betrayal.' . . . [Indeed,] [s]omething beyond the ordinary civil service relationship must be present." *Clements, id.* (quoting *D'Angelo v. Gardner*, 819 P.2d 206, 211 (Nev. 1991)).

Although Plaintiff alleges that a special relationship of trust and reliance existed between him and Defendants because Plaintiff held a safety-critical role as a fire pilot (ECF 008 ¶ 80), this lone allegation is insufficient to rise above the ordinary civil service relationship between Plaintiff and Defendants. Unquestionably, the State of Nevada employs thousands of employees in "safety-critical" positions, and this factor alone does not overcome the ordinary civil service relationship to create a special relationship as alleged by Plaintiff.

What's more, post-*Keating*, the Nevada Legislature left no doubt regarding the ability of classified employees to assert contract-based employment claims when it passed NRS 284.014(1), stating that civil service statutes and regulations "do not create or confer upon any state employee a contractual right to employment." And, a contract for employment with a state employee can only be made where authorized by a specific statute. NRS 284.014(2). State personnel regulations similarly hold that "[a] probationary period does not create a contractual

relationship between the employee and employer." *See* NAC 284.458(4). No statute is identified in the Amended Complaint because any rights Ilmberger had regarding his employment only existed by statute under NRS Chapter 284. Ilmberger had no contractual rights to his classified civil service position and the implied covenant claim must consequently be dismissed.

**V. CONCLUSION**

WHEREFORE, based upon the foregoing points authorities, the Amended Complaint fails to state a claim for relief and Defendants request that the Court dismiss Plaintiff's Amended Complaint in its entirety.

DATED this 3rd day of March 2026.

AARON D. FORD
ATTORNEY GENERAL

By:______________________________
KRISTEN R. GEDDES (Bar No. 9027)
Senior Deputy Attorney General

*Attorneys for Defendants State of Nevada, ex rel. its Department of Conservation & Natural Resources, Division of Forestry, and NDF Chief Pilot Kris Kirkland*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing by using the CM/ECF system on the 3rd day of March 2026.

Luke Busby, Esq.
316 California Avenue
Reno, NV 89509
*Attorneys for Plaintiff*

/s/ *Ginny Brownell*
Ginny Brownell, an Employee of the Office of the Attorney General

**INDEX OF EXHIBITS**

| | | |
|---|---|---|
| Exhibit No. 1 | Findings of Fact, Conclusions of Law and Decision | 5 pages |
| Exhibit No. 2 | Order Denying Petition for Judicial Review<br>First Judicial District Court Case No. 24 OC 00148 1b | 7 pages |