Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorneys for the Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

STEPHEN ILMBERGER, an individual,

Plaintiff,

v.

STATE OF NEVADA, ex rel. its DEPARTMENT OF CONSERVATION & NATURAL RESOURCES, DIVISION OF FORESTRY, a political subdivision of the State of Nevada; NDF Chief Pilot KRIS KIRKLAND in his individual capacity; and DOES 1 through 10 inclusive,

Defendants.

Case No.: 3:25-cv-00712-ART-CSD

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

Plaintiff Stephen Ilmberger, by and through undersigned counsel, respectfully submits this Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Damages and Declaratory Relief, filed March 3, 2026 (ECF 010), and states as follows.

Defendants ask this Court to dismiss the Amended Complaint filed February 17, 2026 (ECF #8) in its entirety, advancing arguments rooted in qualified immunity,

Eleventh Amendment immunity, discretionary immunity, res judicata, and failure to state a claim. Each of these arguments fails when measured against the allegations in the Amended Complaint. The administrative proceedings and the judicial review that Defendants rely on to support dismissal conclusively established that Ilmberger was a permanent classified employee who was terminated without the process required by law. Defendants seek to use that very proceeding as both a sword and a shield — arguing simultaneously that the prior proceeding precludes Ilmberger's claims and that Kirkland could not have known that Ilmberger was entitled to pre-termination due process. The Court should reject this contradictory position and deny the Motion to Dismiss.

## MEMORANDUM OF POINTS AND AUTHORITIES

### *I. STANDARD OF REVIEW*

When considering a motion to dismiss under FRCP 12(b)(6), the court construes the facts in the complaint in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys*., 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A facial plausibility standard is not a "probability

requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

***II. PLAINTIFF'S FOURTEENTH AMENDMENT DUE PROCESS CLAIM AGAINST DEFENDANT KIRKLAND IS NOT BARRED BY QUALIFIED IMMUNITY***

Defendants argue that qualified immunity shields Defendant Kirkland from liability on Plaintiff's 14th Amendment Due Process claim because, at the time of the termination, Ilmberger's status as a permanent classified employee was purportedly not clearly established. This argument fundamentally mischaracterizes both the nature of the right at issue and the factual record.

At the outset, the Defendants' Motion contains numerous unverified assertions of fact about what Defendant Kirkland would have believed under the circumstances without any authentication. For example, on page 7 line 6 of the motion, it states:" Applying the state's generally accepted practice, Ilmberger's release on March 5, 2024, would have been on the last day of his probationary period, as Kirkland believed, and would have been lawful using a calendar year method." No verified statements are provided as to what Kirkland believed. The Plaintiff objects to these statements as unverified assertions that are inadmissible, even for summary judgment under Rule 56, much less at the motion to dismiss stage: *Burns v. Koudelka Transp. LLC*, 754 F. Supp. 3d 1014, 1020 (D. Idaho 2024).

The right of a post-probationary public employee to pre-termination notice and an opportunity to be heard before being deprived of a property interest in continued employment has been clearly established since the Supreme Court decided *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S. Ct. 1487 (1985). As the Amended Complaint alleges at paragraph 53, citing *Smith v. Janney*, 876 F. Supp. 2d 1204,

1218-19 (E.D. Wash. 2012), these rights have been clearly established for purposes of qualified immunity since *Loudermill* was decided in 1985. Under *Loudermill,* a tenured or permanent public employee is entitled to oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to present his or her side of the story before termination. *Id*. *Loudermill* standard requires these minimum procedural protections prior to termination. The parties do not dispute that no such process was provided before Ilmberger was fired.

Defendants contend that the legal question of whether Ilmberger had completed his probationary period was sufficiently uncertain that a reasonable official in Kirkland's position would not have known that pre-termination procedures were required. Again, this claim is unsupported by any admissible evidence. At the motion to dismiss phase, the Court is required to accept as true all well pleaded allegations: See *Vivid Entm't, LLC v. Fielding*, 965 F. Supp. 2d 1113, 1122 (C.D. Cal. 2013).

The Amended Complaint alleges that Ilmberger completed 2,080 hours of continuous service by March 3, 2024, thereby satisfying the full-time equivalent requirement of NAC 284.446(1), and worked an additional twenty hours through March 5, 2024, for a total of 2,100 hours.

As alleged in paragraph 19 of the Amended Complaint, 2024 was a leap year, and by March 5, 2024, Ilmberger had worked a full calendar year as well. By either measure — hours or calendar year — the probationary period was complete before the dismissal notice was issued.

NRS 284.446(1) and (2) are clear how a state employee obtains permanent status:

> NAC 284.446 Time counted toward completion of probationary period.
> (NRS 284.065, 284.155, 284.290)

> 1. Except as otherwise provided in subsection 4 and in NAC 284.4375, a probationary employee must perform his or her duties continuously in the classified service for either 6 months or 1 year (full-time equivalent) as required for the class in which he or she is employed to attain permanent status.
> 2. Service in provisional, emergency, or special disabled status must be credited towards a probationary period if it is immediately followed by probationary or permanent status in the same class.
> 3. Service in a seasonal position must be credited towards the probationary period for the class.

The hearing officer and the First Judicial District Court both confirmed these facts. As alleged in paragraphs 26 through 29 of the Amended Complaint, Hearing Officer Victoria T. Oldenburg ruled on August 23, 2024, that Ilmberger had completed his 2,080 hours by March 3, 2024, and attained permanent status under NAC 284.458(5). NDF's Petition for Judicial Review was denied, affirming the Hearing Officer's decision.

The Defendants' Motion acknowledges, at page 3, that the hearing officer agreed with Ilmberger's calculation and concluded that he attained permanent status two days before his termination. Defendants cannot simultaneously concede that the administrative and judicial proceedings confirmed Ilmberger's permanent status and argue that his permanent status was so unclear that a reasonable official would not have known about it.

Defendants point to Nevada purported practice of using a calendar-year method rather than an FTE method for computing the probationary period - but this reference is unsupported by the law. NAC 284.458(5) expressly provides that if a report of separation is not received by the employee or the Division of Human Resource Management by the close of business on the last day of the probationary period, the employee is considered to have satisfactorily completed probation and acquired

permanent status. If March 5, 2024, was the last day of probation under the calendar-year method, and the dismissal was issued at the end of that workday as alleged in paragraph 18, then under NAC 284.458(5) itself, a separation report needed to have been issued before the close of business on that day to prevent permanent status from vesting.

Furthermore, Kirkland did not merely release Ilmberger during probation without explanation — he affirmatively told Ilmberger that he was not required to provide any reason for the dismissal, as alleged in paragraph 18 of the Amended Complaint. As the hearing officer and District Court later confirmed, Ilmberger had already attained permanent status, then Kirkland's failure to provide any pre-termination process — no notice of charges, no explanation of evidence, no opportunity to respond — was a violation of clearly established law per *Loudermill.*

The qualified immunity inquiry must be evaluated in light of the specific context of the case, as Defendants acknowledge citing *Saucier v. Katz*, 533 U.S. 194 (2001). In this context, taking the allegations as true and drawing all reasonable inferences in Plaintiff's favor, Kirkland's conduct violated not only clearly established law but also Nevada's own rules for calculating when an employee had obtained permanent status.

Further, while an official may be entitled to qualified immunity if the official "could have believed, 'reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right.'" (*Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006) (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)), no reasonable official could have believed that Ilmberger was still a probationary employee by the Nevada's own rules.  Even if a government official claims ignorance of the law, this does not absolve them if the law was clearly established and

a reasonable person in their position would have known their conduct was unlawful. Qualified immunity provides "breathing room" for reasonable but mistaken judgments, but it does not protect those who disregard clearly established law: *Mueller v. Auker,* 700 F.3d 1180, 1185, 1185 (9th Cir. 2012). Under a qualified immunity analysis, a state official is charged with knowing the law to the extent that the law is "clearly established" at the time of the alleged violation. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Burk v. Beene*, 948 F.2d 489, 494 (8th Cir. 1991 quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

***III. THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFF'S STATE DUE PROCESS CLAIM AGAINST ALL DEFENDANTS***

Defendants raise both Eleventh Amendment immunity and discretionary-act immunity under NRS 41.032 as barriers to Plaintiff's state law due process claim based on the Nevada Constitution. Even assuming, for purposes of this argument, that the Eleventh Amendment bars the state constitutional claim against Defendant State of Nevada, that immunity has no application to Defendant Kirkland, who is sued in his individual capacity.

The Eleventh Amendment protects states and state agencies from suit in federal court. As NRS 41.031(3) provides, the State of Nevada does not waive its immunity from suit conferred by the Eleventh Amendment. But the Eleventh Amendment does not extend to state officials sued in their individual capacities. As the Amended Complaint filed February 17, 2026 (ECF #8) alleges at paragraph 7, Kirkland is sued in his individual capacity. An individual-capacity suit seeks to impose personal liability on the government officer for actions taken under color of state law. The Eleventh

Amendment is not implicated where, as here, a plaintiff seeks damages from a state official personally rather than from the state treasury through a suit against the state itself. Accordingly, even if the Eleventh Amendment bars the Second Cause of Action as against Nevada, it does not bar that claim as against Kirkland in his individual capacity.

With respect to Kirkland individually, Defendants argue that discretionary-act immunity under NRS 41.032 shields him from liability on the state constitutional claim because his management decisions regarding Ilmberger involved individual judgment and policy considerations. This argument conflates managerial discretion over employment decisions with the deliberate deprivation of constitutional rights. The Amended Complaint does not challenge Kirkland's discretionary authority to manage NDF pilots or make employment decisions within lawful bounds. Rather, the Amended Complaint alleges at paragraphs 18, 21, and 22 that Kirkland terminated a post-probationary, permanent classified employee without providing any of the procedural protections required by NRS 284.385 and NRS 284.390, and then, upon Ilmberger's reinstatement, subjected him to retaliation designed to force his resignation as alleged at paragraphs 34 through 45. The decision to deprive a permanent employee of constitutionally protected property rights without due process is not the kind of discretionary policy judgment that NRS 41.032 was designed to protect.

Defendants' citation to *Martinez v. Maruszczak*, 123 Nev. 433, 168 P.3d 720 (2007), confirms this framework. To fall within the scope of discretionary-act immunity, a decision must involve an element of individual judgment or choice and be based on considerations of social, economic, or political policy. Firing a permanent employee without the legally required process and then retaliating against him for successfully

asserting his constitutional and statutory rights through the administrative appeal is not a policy-based judgment; it is an abuse of authority that falls outside the scope of discretionary immunity.

More fundamentally, the Nevada Supreme Court's decision in *Mack v. Williams*, 522 P.3d 434, 451 (Nev. 2022), forecloses Defendants' attempt to shield Kirkland from liability under the Nevada Constitution through any form of state-law immunity analogous to federal qualified immunity. In *Mack*, the court held that qualified immunity as that doctrine is understood under federal law is not a defense available to state actors sued for violations of the individual rights enumerated in Nevada's Constitution. The court in *Mack* reasoned that NRS 41.031(1) waives the State's and a state actor's immunity from liability unless an express exception to the waiver applies, and emphasized that Nevada's qualified waiver of sovereign immunity is to be broadly construed, citing *Martinez*, 123 Nev. at 441, 168 P.3d at 725. The court noted that it has repeatedly refused to imply provisions not expressly included in the legislative scheme regarding Nevada's immunity waiver, citing *Zenor v. State, Dep't of Transp*., 134 Nev. 109, 110, 412 P.3d 28, 30 (2018). The court concluded that because the Legislature has not provided for a state-law equivalent of qualified immunity, the court could not supply that defense to claims under the Nevada Constitution, reasoning that to do so would undermine this State's public policy, reflected in NRS 41.031, that state actors should generally take responsibility when they commit wrongs. *Mack*, 522 P.3d at 451.

Further, determining whether the Plaintiff had obtained permanent status under Nevada’s rules was not a discretionary act, but rather, one that is governed by NAC 284.446. “The concept of discretion connotes a "choice" among various options, and

therefore the exception cannot apply if the employee in question was "bound to act in a particular way." *Miller v. United States*, 992 F.3d 878, 885 (9th Cir. 2021). The Amended Complaint does not challenge Kirkland's discretionary authority to manage NDF pilots or make employment decisions within lawful bounds. Rather, the Amended Complaint alleges that Kirkland terminated a post-probationary, permanent classified employee without providing any of the procedural protections required by NRS 284.385 and NRS 284.390, and then, upon Ilmberger's reinstatement, subjected him to retaliation designed to force his resignation.

The decision to deprive a permanent employee of constitutionally protected property rights without due process is not the kind of discretionary policy judgment that NRS 41.032 was designed to protect. Discretionary immunity shields government actors who make policy-based judgments within their lawful authority; it does not immunize the violation of an employee's established constitutional rights. Firing a permanent employee without required process and then retaliating against him for asserting his rights is not a policy-based judgment; it is an abuse of authority.

***V. RES JUDICATA DOES NOT BAR PLAINTIFF'S FEDERAL OR STATE DUE PROCESS CLAIMS***

Defendants argue that the administrative hearing and subsequent judicial review preclude Plaintiff's due process claims under principles of res judicata. This argument fails for two independent reasons.

First, the prior administrative proceeding actually supports Plaintiff's claims rather than defeating them. The hearing officer found that Ilmberger completed 2,080 hours by March 3, 2024, attained permanent status under NAC 284.458(5), and was wrongfully terminated. The First Judicial District Court affirmed that decision. As

alleged in paragraphs 26 through 29 of the Amended Complaint, these proceedings conclusively established the factual predicate for Plaintiff's due process claims — namely, that he was a permanent employee who was fired without the procedural protections to which permanent employees are entitled. The administrative proceeding vindicated Ilmberger's employment status; it did not adjudicate whether the deprivation of his constitutional rights entitled him to damages under 42 U.S.C. § 1983 or the Nevada Constitution.

Second, claim preclusion requires, among other things, that the subsequent action be based on the same claims or any part of them that were or could have been brought in the first case. *Weddell v. Sharp*, 131 Nev. 233, 241, 350 P.3d 80, 85 (2015). Federal courts follow state law claims and issue preclusion rules: 28 USCS § 1738.

The administrative proceeding was a statutory appeal of a rejection from probation under NAC 284.6562. It was not a forum in which Ilmberger could have brought, or did bring, a claim for monetary damages under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights or damages claims under the Nevada Constitution. The hearing officer's authority was limited to reviewing the propriety of the employment action and ordering reinstatement with backpay — she had no jurisdiction to award compensatory damages, punitive damages, or damages for emotional distress arising from a constitutional violation. A Section 1983 claim for damages based on a due process violation is fundamentally different from an administrative appeal seeking reinstatement to a civil service position. The two proceedings do not involve the same claims, and the administrative forum could not have provided the relief Plaintiff now seeks in this Court. In so far as the prior

proceedings involved the same “issue” those issues were clearly resolved in the Plaintiff's favor, not the Defendants.

Additionally, the post-reinstatement allegations — including Kirkland's retaliation, the hostile work environment, and the constructive discharge — arose entirely after the administrative hearing. These facts could not possibly have been litigated in the prior proceeding because they had not yet occurred. Res judicata cannot bar claims based on conduct that postdates the prior adjudication.

## *VI. PLAINTIFF'S CONSTRUCTIVE DISCHARGE CLAIM STATES A CLAIM FOR RELIEF*

Defendants argue that the allegations in the Amended Complaint describe only trivial annoyances insufficient to support a constructive discharge claim under Nevada law. This argument improperly asks the Court to weigh the evidence at the motion-to-dismiss stage rather than accept the well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor.

Under Nevada law, as set forth in *Dillard Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372, 377, 989 P.2d 882, 885 (1999), and *Martin v. Sears, Roebuck & Co*., 111 Nev. 923, 925-26, 899 P.2d 551, 553 (1995), a plaintiff must prove that the employee's resignation was induced by actions and conditions that violate public policy, that a reasonable person in the employee's position would have also resigned because of the aggravated and intolerable employment actions, that the employer had actual or constructive knowledge of the intolerable conditions and their impact, and that the situation could have been remedied.

It is clearly established that it is a violation of a “strong and compelling public policy” to fire an employee for reporting the illegal conduct of an employer: *Ceballos v.*

*NP Palace, LLC*, 514 P.3d 1074, 1078 (Nev. 2022) citing *Wiltsie v. Baby Grand Corp*., 105 Nev. 291, 293, 774 P.2d 432, 433 (1989). This is what happened here, as alleged in the amended complaint. The plaintiff was fired in violation of his constitutional rights and Nevada law, reported it, then prevailed in the administrative process, and despite his reinstatement was told that despite him prevailing in the administrative process, Kirkland was going to subject him to additional scrutiny, which any reasonable employee would have understood that Kirkland was going to fire Ilmberger, decision of the Court notwithstanding.

The Amended Complaint alleges more than trivial workplace annoyances. Paragraph 36 alleges that on Ilmberger's first day back at work on October 15, 2024, Kirkland expressly told Ilmberger that he would be subject to extraordinary scrutiny including surprise evaluations, training, and surprise policy quizzes — measures never imposed on Ilmberger or any other pilot at NDF. Paragraph 37 alleges that it was clear from this meeting that Kirkland's intent was to create a pretext to fire Ilmberger and to retain his replacement, Matt Hansen. Paragraph 38 alleges that Ilmberger was compelled to share a computer and desk with Hansen despite sufficient room for a new desk and the fact that every other NDF pilot had their own desk and computer, and that Hansen had placed a screen saver on the shared computer that Ilmberger perceived as an insult directed at him. Paragraph 39 alleges that Ilmberger found a mocking reference to the leap-year issue handwritten on the briefing whiteboard. Paragraph 40 alleges that Kirkland placed Ilmberger under the supervision of a fellow fire pilot, an extraordinary measure because fire pilots are supervised only by the chief pilot, not by peers.

These allegations, taken together and viewed in the light most favorable to Plaintiff, describe plain retaliation against an employee who successfully vindicated his employment rights through the administrative process. The retaliatory nature of these actions is critical. These were not routine management decisions; they were targeted measures imposed on one pilot — and only that pilot — immediately upon his return from a wrongful termination that had been reversed by both a hearing officer and a state district court. The public policy at issue is the right of a permanent classified employee to exercise his due process rights without suffering retaliation for doing so.

Moreover, the Amended Complaint alleges facts that elevate the safety dimension of the constructive discharge beyond the typical workplace dispute. Paragraph 42 alleges that fire pilots are required to comply with the FAA's IM SAFE tool for evaluating whether a pilot is in a safe condition to fly, and that the stress created by Kirkland's actions rendered it unsafe for Ilmberger to fly an NDF fire helicopter. Ilmberger was not merely an office worker who found his working conditions unpleasant. He was a fire pilot responsible for flying a helicopter with crew members into burning forests, a role in which the stress and hostility created by Kirkland's retaliation had direct implications for the safety of flight. A reasonable person in Ilmberger's position — a veteran pilot with over 50 years of flying experience and no prior accidents, incidents, or violations — would have recognized that continuing to fly under these conditions posed unacceptable risks and would have felt compelled to resign, rather than have their reputation and career destroyed.

Defendants characterize the twelve-day period between reinstatement and resignation as evidence that the conditions were insufficiently severe or prolonged. But the brevity of the period between reinstatement and resignation actually supports the

inference that Kirkland's retaliatory campaign was so immediate and so intense that Ilmberger had no reasonable alternative but to resign. Paragraph 47 of the Amended Complaint alleges that Defendants either intended to force Ilmberger's resignation or had foreseeable knowledge that their actions would lead to his resignation. At the motion-to-dismiss stage, this allegation must be accepted as true.

Because the Amended Complaint alleges facts satisfying each element of constructive discharge under Nevada law, the Third Cause of Action states a claim for relief and should not be dismissed. Defendants' argument that the post-reinstatement due process claims must be dismissed as dependent upon a facially invalid constructive discharge claim likewise fails because Ilmberger was actually fired by Kirkland in violation of his due process rights as was found by the state court.

***VII. PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING STATES A CLAIM FOR RELIEF***

Defendants argue that civil service employment in Nevada cannot support a claim for breach of the implied covenant of good faith and fair dealing because such employment is governed by statute rather than contract. Defendants rely primarily on *Keating v. Gibbons*, 2010 WL 11594814 (D. Nev. Mar. 26, 2010), and NRS 284.014(1), which provides that civil service statutes and regulations do not create or confer upon any state employee a contractual right to employment. It does not follow from this premise that Plaintiff can't claim breach of the implied covenant of good faith and fair dealing. Only “at-will” employees are generally precluded from bringing such claims: “Since a claim arising from breach of contract has no application to at-will employment, and Martin has not demonstrated that he was other than an at-will employee, a breach of contract cause of action will not lie. *Martin v. Sears, Roebuck &*

*Co.*, 111 Nev. 923, 928, 899 P.2d 551, 554 (1995) citing *Bally's Employees' Credit Union v. Wallen*, 105 Nev. 553, 555, 779 P.2d 956, 957 (1989).

The Amended Complaint alleges facts sufficient to establish that the relationship between Ilmberger and Defendants went beyond the ordinary civil service relationship. Paragraph 80 alleges that a special relationship of trust and special reliance existed because Ilmberger was a public employee in a safety-critical role as a fire pilot, relying on NDF and Kirkland for fair administration of employment policies, safe working conditions, and adherence to statutory protections in exchange for his service in high-risk firefighting operations. The Nevada Supreme Court in *K Mart Corp. v. Ponsock*, 103 Nev. 39, 49, 732 P.2d 1364, 1370-71 (1987), ruled that that liability for breach of the good faith covenant is warranted "only in rare and exceptional cases," and where "the party in the superior or entrusted position" has engaged in "grievous and perfidious misconduct"), abrogated on other grounds by *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990); see also Restatement (Second) of Contracts § 205 (1981). The Court further held that where a “special element of reliance” exists, a breach of the good faith covenant is a tort claim, not a contract claim. Id. at 51: “The special relationships of trust between this employer and this employee under this contract under this kind of abusive and arbitrary dismissal cries out for relief and for a remedy beyond that traditionally flowing from breach of contract.” As alleged in the Amended Complaint at para. 80:

> A special relationship of trust and special reliance existed between Ilmberger and Defendants, as Ilmberger was a public employee in a safety-critical role as a fire pilot, relying on NDF and Kirkland for fair administration of employment policies, safe working conditions, and adherence to statutory protections in exchange for his dedicated service in high-risk firefighting operations.

The Amended Complaint alleges exactly such extraordinary circumstances. Ilmberger was not simply let go from a routine civil service position. He was terminated without cause after attaining permanent status, denied required performance evaluations during probation as alleged in paragraph 17, denied backpay and benefits for nearly two years after judicial affirmation of his reinstatement as alleged in paragraph 32, subjected to a retaliatory campaign upon his return designed to force him out of his position, and ultimately constructively discharged. Paragraph 81 alleges that Defendants' conduct went well beyond the bounds of an ordinary breach of contract, rising to the level of the tort, as it was malicious, reckless, and retaliatory. Whether these allegations ultimately establish a special relationship sufficient to support an implied covenant claim is a factual question inappropriate for resolution on a motion to dismiss. Again, the State of Nevada has waived sovereign immunity for tort claims under NRS 41.031(1), as described in *Mack v. Williams*, 522 P.3d 434, 451 (Nev. 2022).

**CONCLUSION**

For the foregoing reasons, the Amended Complaint states claims for relief under each cause of action, and Defendants' Motion to Dismiss should be denied in its entirety.

Dated: Mar 17, 2026

By: */s/ Luke Busby, Esq.*

Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on the date shown below, I caused service to be completed of a true and correct copy of the foregoing by:

______ personally delivering;
______ delivery via Reno/Carson Messenger Service;
______ sending via Federal Express (or other overnight delivery service);
____ depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,
_x_ delivery via electronic means (fax, eflex, NEF, etc.) to:

Kristen R. Geddes
Office of the Attorney General
5420 Kietzke Lane
Suite 202
Reno, NV 89511
775-687-2142
Email: kgeddes@ag.nv.gov

Dated: Mar 17, 2026

By: /s/ Luke Busby, Esq.
Luke Busby, Esq.