AARON D. FORD
Attorney General
KRISTEN R. GEDDES
NV State Bar No. 9027
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
9790 Gateway Drive, Suite 100
Reno, Nevada 89521
Tele: (772) 687-2142
Fax: (775) 687-1822
Email: kgeddes@ag.nv.gov

*Attorneys for Defendants State of Nevada, ex rel. its Department of Conservation & Natural Resources, Division of Forestry, and NDF Chief Pilot Kris Kirkland*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEPHEN ILMBERGER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NEVADA, ex rel. its DEPARTMENT OF CONSERVATION & NATURAL RESOURCES, DIVISION OF FORESTRY, a political subdivision of the State of Nevada; NDF Chief Pilot KRIS KIRKLAND in his induvial capacity; and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No. 3:25-cv-00712-ART-CSD<br><br>**REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF** |

Defendants STATE OF NEVADA, ex rel. its DEPARTMENT OF CONSERVATION & NATUAL RESOURCES, DIVISION OF FORESTRY, a political subdivision of the State of Nevada (NDF) and NDF Chief Pilot KRIS KIRKLAND (collectively Defendants), by and through their attorneys, AARON D. FORD, Attorney General and KRISTEN R. GEDDES, Senior Deputy Attorney General, and Reply to the Opposition to Defendants' Motion to

Dismiss Plaintiff's Amended Complaint for Damages and Declaratory Relief. This Reply is made and based upon the following Memorandum of Points and Authorities and all pleadings and documents on file herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. ARGUMENT

### A. Defendants are Immune from all Pre-Termination Due Process Claims, Which are Also Barred by *Res Judicata*

Defendants argued a clear delineation in the Motion to Dismiss between Plaintiff's pre-termination Due Process claims as opposed to his post-reinstatement constructive discharge Due Process claims. *See* ECF #10 at 5:14–20. Plaintiff's federal and state pre-termination Due Process claims are barred by immunity doctrines and *res judicata*.

1. Defendant Kirkland is entitled to qualified immunity.

The Supreme Court has stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S. Ct. 534, 116 L.Ed.2d 589 (1991) *(per curiam)).*

Plaintiff argues that the right of a post-probationary employee to have notice and a hearing prior to dismissal has been clearly established since *Loudermill*. ECF #14 at 3:22–25. As a broad general proposition, the statement is true, but in *Katz*, the Court stated that a vital component of the inquiry is that the analysis must be undertaken in light of the specific context of the case, and not as a broad general proposition. Under the specific facts of this case, it is clear that any post-probationary right to notice and hearing that Plaintiff claimed was not clearly established such that Kirkland, acting as a reasonable Chief Pilot, would have known that Plaintiff was entitled to rights of a permanent classified employee.

The fact that Plaintiff calls attention to facts in the FAC such as whether 2024 was a leap year and that Ilmberger was released at the *end* of the work day on March 5, 2024, further illustrates that a reasonable person could have been mistaken whether Ilmberger's probationary period was counted by hours, by a calendar year, or an anniversary year method. *See* ECF #14

at 4:20.[1] This is true because witnesses for NDF testified it was the State's practice to calculate the probationary period as one calendar year and not hours worked while Ilmberger argued it was counted by hours worked. Ultimately, the decision issued by the hearing officer turned on two (2) ten-hour shifts—or a difference of 20 hours, worked by Ilmberger on March 4th and 5th, 2024. Mtn., Ex. 1 at 3:14–18. Applying the state's generally accepted practice, Ilmberger's release on March 5, 2024, would have been on the last day of his probationary period and would have been lawful using a calendar year method. *Id.*[2] *Mills v. Leguen*, No. 2:24-CV-02107-NJK, 2025 WL 1448464, at *2 (D. Nev. May 19, 2025) ("Clearly established" in this context means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful."). Qualified immunity shields Kirkland from pre-termination Due Process claims because any due process rights Ilmberger claimed as a permanent classified employee were not clearly established under conflicting legal interpretations to compute a one-year (FTE) probationary period. Kirkland's utilizing a calendar-method customarily used by the State would not have alerted Kirkland that Ilmberger became permanent in advance of one calendar year, or that any pre-termination notice and hearing procedures were required. Thus, the pre-termination Due Process claims are barred by qualified immunity and must be dismissed.

/ / /

/ / /

---

[1] Indeed, Plaintiff argues that because 2024 was a leap year, Plaintiff completed probation under either an hours or calendar year method (ECF #14 at 4:20–21), seeming to suggest that a leap year further impacts a calendar year methodology. This further demonstrates that a reasonable supervisor could be mistaken whether a difference of 20-hours or a leap year results in the completion of a probationary period—or not.

[2] Although Plaintiff argues there is no evidence to support Kirkland's belief that his actions were lawful, taking the following facts alleged in the FAC demonstrates otherwise: (1) a probationary period is <u>one-year</u> (¶ 3); (2) Plaintiff was released on March 5, 2024 (*i.e.*, at the end of <u>one-year</u> (¶ 18); (3) Plaintiff was issued a "dismissal from <u>probation</u> notice" (¶ 18); (4) Defendant stated to Plaintiff he was not required to provide a reason for dismissal (¶ 18) (following the logic that a probationary employee is akin to an at-will employee that can be rejected for any lawful reason or no reason per NAC 284.450).

2. Plaintiff does not contest that the 11th Amendment bars the state Due Process claim again Defendant State of Nevada *ex rel*. its Department of Conservation and Natural Resources, Division of Forestry.

Under the Eleventh Amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 907, 79 L.Ed.2d 67 (1984). Plaintiff does not appear to dispute that the Eleventh Amendment immunity bars the state Due Process claim against Defendant State of Nevada. *See* ECF #14 at 8:3–5 (Even if it is barred against the State of Nevada). Here, Defendants only asserted Eleventh Amendment immunity as to Defendant State of Nevada, recognizing that state actors can be sued in their individual capacity. As Defendant Kirkland is sued in his individual capacity, Defendants did not assert Eleventh Amendment immunity as to Kirkland. *See generally,* ECF #10 at 9:12–14. Because Defendant State of Nevada has not waived Eleventh Amendment immunity in federal court, Plaintiff's state law Due Process claim asserted against the State in the second cause of action is subject to dismissal.

3. Discretionary immunity, NRS 41.032, shields Defendant Kirkland from the state law Due Process claim.

"When forced to face the 'burdens of litigation' erroneously, public officials lose the protections of qualified and discretionary-act immunity in their entirety." *Clark Cnty. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 141 Nev. Adv. Op. 31, 570 P.3d 135, 141 (2025) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)). "Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." *Borelli v. Renaldi*, 243 A.3d 1064, 1072 (Conn. 2020). The Nevada Supreme Court has held that there is a strong public policy for granting employers broad discretion in managing their offices, and the hiring and firing of employees is a large part of management. Discretionary act

immunity NRS 41.032(2), bars the Due Process claim against Defendant Kirkland because Plaintiff's termination was the product of Kirkland's individual judgment or choice based on considerations of social, economic, or political policy. Accordingly, Kirkland should not be forced to continue to face the burdens of litigation, requiring dismissal of the state law Due Process claim .

4. The federal and state pre-termination Due Process claims are precluded by the full trial-like proceeding and binding decision in the administrative action.

A state administrative decision can have preclusive effect in a federal action under 42 U.S.C. § 1983 so long as the administrative proceeding provided the "'minimum procedural requirements' of the Due Process Clause of the Fourteenth Amendment." *Dias v. Elique,* 436 F.3d 1125, 1128 (9th Cir. 2006) (quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481, 102 S. Ct. 1883, 72 L.Ed.2d 262 (1982)); *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 796–97, 106 S. Ct. 3220, 92 L.Ed.2d 635 (1986); *and see, Hafter v. Clark*, 992 F. Supp. 2d 1063, 1068–69 (D. Nev. 2014).

Plaintiff acknowledges in his Opposition that "[a]s alleged in paragraphs 26 through 29 of the Amended Complaint, these [administrative and judicial review] proceedings conclusively established the factual predicate for Plaintiff's due process claims—namely, that he was a permanent employee who was fired without the procedural protections to which permanent employees are entitled." ECF #13:10–14:4.

Here, Plaintiff admits that the basis and pre-termination Due Process claims are the same in the FAC as already heard and determined by the hearing officer. *See* ECF #14 at ¶¶ 51–53 and ¶¶ 60–62. Although Plaintiff resists the application of *res judicata* arguing that the administrative forum did not afford him the same damages available under § 1983 and Nevada law, an alternate theory of recovery is insufficient to evade the preclusive effect of the administrative decision followed by judicial review. *See Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 516 (8th Cir. 1995) (employee's argument fails because requested remedies need not remain the same in order for issue preclusive effect to be given a prior determination, citing *Utah Constr.,* 384 U.S. at 418, 86 S. Ct. at 1558 (holding an

agency's factual findings were preclusive in a later suit even though the request for and ability to allow damages were not the same in the two proceedings)); *and see, Eugster v. Wash. State Bar Ass'n*, 790, 397 P.3d 131, 147 (Wash. App. 2017) (citing *Kelly-Hansen v. Kelly-Hansen*, 941 P.2d 1108 (Wash.App. 1997)) (A matter should have been raised and decided earlier if it is merely an alternate theory of recovery or an alternate remedy).

To be sure, numerous § 1983 decisions by this Court and the Ninth Circuit have held that an earlier administrative appeal by the state employee precludes a later § 1983 case. *See, e.g., Snow v. Nevada Dep't of Prisons*, 543 F. Supp. 752, 756–57 (D. Nev. 1982) (neither Plaintiff nor defendant Department of Prisons may relitigate those issues actually determined by the hearing officer and necessary to his decision, insofar as the instant § 1983 claims are concerned); *Holcombe v. Hosmer*, 477 F3d 1094 (9th Cir. 2007) (Ninth Circuit held § 1983 claims of former state highway patrol employee were precluded when employee appealed her termination and received an administrative hearing where she was represented by counsel, testified, presented evidence, cross-examined witnesses, and successfully excluded some evidence. The hearing officer upheld the termination and the District Court for the State of Nevada affirmed); *and see, White v. City of Pasadena,* 671 F.3d 918, 927 (9th Cir. 2012) ("State court decisions and reviewed administrative decisions are thus entitled to the same preclusive effect in a § 1983 action as in any other action, namely the preclusive effect they would be given in the courts of the state that issued the judgment.").

A Personnel Commission hearing officer acts in a judicial capacity when it hears an appeal of a state employee in a termination appeal and its decision can be equated with a state court judgment for purposes of applying *res judicata*. *Lambert v. Andrews*, 79 Fed.Appx. 983 (9th Cir. 2003) (citing *Snow*, 543 F. Supp. at 756).[3] For the doctrines of *res judicata* or collateral estoppel to be appropriate, it is necessary that both sides have the opportunity to seek

---

[3] Without question, if the administrative decision is *not* considered a final decision on the merits, the issue of whether Plaintiff completed a probationary period and had attained permanent remains open to attack by Defendants in this proceeding as part of its defense of the Due Process claims.

judicial review of the administrative determination. *Snow, id*. (citing *Kremer v. Chemical Construction Corp*., —- U.S. ——, at fn. 26, 102 S. Ct. 1883 at fn. 26)

Plaintiff's due process allegations were heard before the Personnel Commission hearing officer where Plaintiff was represented by counsel and had the opportunity to offer witness and exhibit evidence. The decision of the Personnel Commission hearing officer was subject to judicial review in the First Judicial District Court of Nevada. ECF #10, Ex. 2.

It is clear that the facts and claims concerning Plaintiff's pre-termination Due Process claims are identical to those already heard and determined at the administrative hearing. A subsequent § 1983 claim that provides a different remedy does not alter the preclusion analysis. The fact remains that Plaintiff already litigated the allegations and claims to denial of due process to a final, binding decision in the administrative forum.

Although Plaintiff argues that his post-reinstatement allegations of Due Process violations cannot be barred by *res judicata* because those acts occurred after Plaintiff's reinstatement (ECF #14 at 12:3–4) Defendants' Motion clearly analyzed Plaintiff's pre-termination allegations from his post-reinstatement constructive discharge allegations. Thus, Defendants did not argue Plaintiff's post-reinstatement Due Process allegations were barred by *res judicata*. *See* ECF #10 at pp. 10–11. Nevertheless, as argued below, the post-reinstatement Due Process and constructive discharge claims also fail to state a claim for relief on different grounds.

**B. The Post-Reinstatement Due Process Claims Fail For the Reason that the Constructive Discharge Claim Fails to State a Claim for Relief**

In *Lauck v. Campbell Cnty.*, 627 F.3d 805, 812 (10th Cir. 2010), the court described "the nature of the right of procedural due process in the constructive-discharge context [a]s peculiar and requires careful analysis." A constructive discharge differs in essential ways from a true discharge. *Id*. The court explained that it is not ambiguous about the loss an employee will suffer if an employer fires an employee. *Id*. On the other hand, "in the constructive-discharge context, the employer may not even know that its actions have compelled the employee to quit. When that is the case, the employer can hardly be required to provide notice or a hearing before

the resignation; after all, the employer does not realize that the employee's employment is ending. Moreover, because negligent conduct does not implicate the Due Process Clause [citations] the unintentional, unknowing creation of intolerable working conditions cannot be the predicate of a due-process claim." In *Lauck*, the court identified three elements of a constructive discharge due process claim:

> First, he must show that a property right was violated. In this context the requirement is that he prove that the resignation was a constructive discharge—that is, the former employee resigned because of conditions so intolerable that a reasonable person would feel compelled to resign. Second, the employee must establish the *mens rea* necessary for a due-process violation—that the employer knew or intended (or perhaps was on notice) that such intolerable conditions were being imposed on the employee. Third, the employee must show that he was denied the necessary procedure—that the employer did not conduct an appropriate hearing to determine whether its actions would violate the employee's contractual rights.

*Lauck*, 627 F.3d at 812. In *Ulrey v. Reichhart*, 941 F.3d 255, 262 (7th Cir. 2019), the court held that "[f]or due-process purposes, there is a critical difference between a resignation and a discharge, and that difference must be protected by insisting that the exceptions for constructive discharges . . . be kept narrow."

1. <u>No constructive discharge claim can be had based upon Plaintiff's subjective feelings of job dissatisfaction and a handful of trivial complaints</u>.

Although Plaintiff places great emphasis on his own self-evaluation under the IM SAFE tool of perceived stress caused by the work environment, a constructive discharge claim is evaluated under an objective standard. *See, e.g.*, ECF #8 ¶ 42. Because the standard for assessing a constructive discharge claim "is an objective one; it 'cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held.' " *Amira-Jabbar v. Travel Servs., Inc.*, 726 F. Supp. 2d 77, 87 (D.P.R. 2010) (quoting *Román v. Potter*, 604 F.3d 34, 42 (1st Cir. 2010) (additional citations omitted)) (Title VII context); *Liston v. Las Vegas Metro. Police Dept.*, 111 Nev. 1575, 908 P.2d 720 (1995) (citing objective standard); *Herzog v. Banner*

*Churchill Cmty. Hosp.*, No. 309-CV-567-ECR-RAM, 2010 WL 1418867, at *4 (D. Nev. Apr. 7, 2010) (applying objective standard to find failure to state constructive discharge claim); *Cates v. Pub. Employees' Ret. Sys. of Nevada*, No. 0305CV-00696-LRH-RAM, 2008 WL 873611, at *4 (D. Nev. Mar. 27, 2008), aff'd sub nom. *Cates v. Pub. Emp. Ret. Sys. of Nevada*, 357 F. App'x 8 (9th Cir. 2009) (an employee's own subjective opinion of workplace stress has been held to be insufficient to establish aggravated and insufferable employment actions and conditions).

Plaintiff argues at length that Defendant Kirkland intended to retaliate against Plaintiff to force Plaintiff to constructively discharge, but the <u>facts alleged</u> in support of the claim demonstrate the theory is specious and that the FAC fails to allege a constructive discharge claim. To be sure, the complaints cited by Plaintiff are minor and were "just 'ordinary slings and arrows that workers routinely encounter in a hard, cold world' [that are] insufficient to state a claim for constructive discharge." *Amira-Jabbar v. Travel Servs.*, Inc., 726 F. Supp. 2d 77, 87 (D.P.R. 2010) (quoting *De La Vega v. San Juan Star, Inc.,* 377 F.3d at 117 (additional citations omitted)).

Plaintiff alleges that he was told he would be subjected to scrutiny and would be supervised by another pilot on reinstatement, but these things never even occurred since Plaintiff quit just 12 days after his reinstatement. That Plaintiff had to share a desk and computer with another employee can hardly be said to be an intolerable working condition. Additionally, even if the computer with whom Plaintiff shared with another employee had a screensaver that stated, "I'm Gay, that O.K.!", this would not even make out a Title VII claim, whereas a due process constructive discharge claim "must be even more egregious than those that would support a finding of a [Title VII] hostile work environment." *Compare, Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986) (mere utterance of epithet which engenders offensive feelings would not violate Title VII); *and, Witte v. Wisc. Dep't of Corr.*, 434 F.3d 1031, 1035–36 (7th Cir. 2006) (due process constructive discharge claim uses same general approach as a Title VII, but working conditions must be more egregious); *Ulrey v. Reichhart*, 941 F.3d 255, 262 (7th Cir. 2019) (quoting *Thompson v. Mem. Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010) (constructive discharge can result from a hostile work environment

only if the environment is even more egregious than that needed for a hostile work environment)). Finally, a comment on a white board stating that it was not a leap year falls far short of an egregious condition that overcomes the normal motivation of a competent, diligent, and reasonable employee to remain on the job.

The circumstances that Plaintiff complains of were neither "unusually aggravated" nor amounted to a "continuous pattern" and fail to demonstrate intolerable working conditions. *Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2000) (An isolated incident of mistreatment is not enough; employee had to show aggravating factors such as a continuing pattern of discriminatory treatment). Even if Plaintiff was dissatisfied or uncomfortable in the workplace, the conditions to which Plaintiff was subjected were not, as a matter of law, so intolerable that a reasonable person would leave the job. *Herzog, supra. at* *4 (it was not unreasonable for Plaintiff to feel uncomfortable in her situation, but the conditions to which Plaintiff was subjected were not so intolerable that a reasonable person would leave the job). ECF #8, ¶¶ 36, 38–40.[4]

Plaintiff's constructive discharge claim fails to state a claim for relief and must be dismissed. *A fortiori*, the Due Process constructive discharge claims also fail to state a claim and must likewise be dismissed.

### C. There Was No Special Relationship to Support a Claim For Tortious Breach of the Covenant of Good Faith and Fair Dealing

Without an employment contract or the existence of a special relationship, a claim for tortious breach of the implied covenant of good faith and fair dealing fails as a matter of law. *Alam v. Reno Hilton Corp.,* 819 F. Supp. 905, 911 (D. Nev. 1993). As demonstrated in the Motion to Dismiss, Plaintiff had no contract for employment because his civil service employment was controlled by statute under the provisions of NRS Chapter 284. *See* ECF #10 at 15:14–16:16; NRS 284.014; *Keating v. Gibbons*, No. 308CV00609RCJRAM, 2010 WL 11594814, at *6 (D. Nev. Mar. 26, 2010).

[4] Plaintiff's hyperbolic argument that he felt compelled to resign rather than have his reputation and career destroyed is not supported by the allegations or claims in the FAC. *See generally*, ECF #14:21–24.

Further, "in most respects employment remains an arm's length, 'take it or leave it' relationship." *Patton v. J.C. Penney Co.,* 123, 719 P.2d 854, 858 (Or. 1986). "If a relationship is nothing more than an arm's length transaction, such a relationship cannot give rise to a tort claim for violation of the covenant of good faith and fair dealing." *Newco W., LLC v. Baker Hughes Oilfield Operations, Inc.*, 2014 WL 12805707, at *3 (D. Nev. Sept. 29, 2014) (quoting *Enriquez v. J.P. Morgan Chase Bank, N.A.*, 2009 WL 160245, *7 (D.Nev. Jan. 22, 2009)); *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 106 (E.D. Cal. 2010) (quoting *Pension Trust Fund v. Fed. Ins. Co.,* 307 F.3d 944, 955 (9th Cir. 2002) (applying California law)) (no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.' ").

Plaintiff argues that a special relationship was created based upon his safety critical role as fire pilot, but this was simply the job that he applied for and was hired to perform. *See* ECF #8 ¶ 9; ECF #14 at 16:3–10. Consequently, Plaintiff's argument that a special relationship was created by nothing more than the performance of his job, necessarily fails. *See Travis v. Knappenberger*, 2000 WL 1853084, at *4 (D. Or. Dec. 13, 2000) (citing *Vanderselt v. Pope,* 963 P.2d 130, 133 n. 2 (Or.App. 1998) ("employment, in and of itself, does not create a 'special relationship.' ").)

The Nevada Supreme Court has stated that it looks for facts such as a "promise of employment 'until retirement,' lengthy duration of employment, and termination characterized by 'deception,' 'perfidy,' and 'betrayal.' . . . [and] [s]omething beyond the ordinary civil service relationship must be present." *Clements v. Airport Auth. of Washoe Cnty*., 69 F.3d 321, 336 (9th Cir. 1995) (quoting *D'Angelo v. Gardner*, 107 Nev. 704, 819 P.2d 206, 211 (1991)); *Loghry v. Unicover Corp.,* 927 P.2d 706, 712 (Wyo. 1996) (identifying "the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service" as bases to find special relationship).

Plaintiff barely completed a year of employment with the State and had no lengthy duration of employment nor any promises of employment "until retirement." There was no separate consideration or other common law or statutory rights to his employment. As

demonstrated by the qualified immunity argument, Plaintiff's termination was not characterized by "deception, perfidy or betrayal." To allow Plaintiff's tortious breach claim to proceed based a special relationship based solely upon Plaintiff's job in a safety-sensitive role would subsume the rule that a special relationship is reserved for "rare and exceptional cases." *Clements, id.* (limiting tort claim to a narrow class of cases having "special reliance, trust and dependency"); *Springer v. Blue Cross & Blue Shield of Wyoming*, 944 P.2d 1173, 1178 (Wyo. 1997) (limiting the tort claim to "rare and exceptional cases"). Plaintiff's tortious breach of the covenant of good faith and fair dealing fails to state a claim and must be dismissed.

## II. CONCLUSION

WHEREFORE, based upon the foregoing points authorities, Defendants are immune from the claims in the Amended Complaint, which is also barred by *res judicata*. The Amended Complaint also fails to state a claim for relief and Defendants request that the Court dismiss Plaintiff's Amended Complaint in its entirety.

DATED this 24th day of March 2026.

AARON D. FORD
ATTORNEY GENERAL

By:______________________________
KRISTEN R. GEDDES (Bar No. 9027)
Senior Deputy Attorney General

*Attorneys for Defendants State of Nevada, ex rel. its Department of Conservation & Natural Resources, Division of Forestry, and NDF Chief Pilot Kris Kirkland*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing by using the CM/ECF system on the 24th day of March 2026. Parties will be notified by the Court's notification system.

Luke Busby, Esq.
316 California Avenue
Reno, NV 89509
*Attorneys for Plaintiff*

/s/ *Ginny Brownell*
Ginny Brownell, an Employee of the Office of the Attorney General